# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CURTIS OLSON,                            :
                                         :
     *Plaintiff,*                         :    Case No. 1:23-cv-189
                                         :
vs.                                      :    Judge Jeffery P. Hopkins
                                         :
STATE FARM FIRE & CASUALTY               :
CO.,                                     :
                                         :
     *Defendant.*                        :

## OPINION & ORDER

The instant dispute between Plaintiff Curtis Olson ("Plaintiff" or "Olson") and Defendant State Farm Fire & Casualty Company ("State Farm") centers around damage caused to Olson's roof by a wind and hailstorm. Following that storm, Olson sought an appraisal to determine the amount of loss caused by the storm. His insurer, State Farm, denied that request. Olson is now asking the Court to compel State Farm to conduct an appraisal to assess the amount of loss—even though the crux of the parties' disagreement turns on a legal dispute over the interpretation of provisions of the Ohio Administrative Code. As determined by this Order, Olson may in the future be, but is not right now entitled to the appraisal he so desperately seeks—not at least until the Court rules on the proper construction of the language in the policy against the backdrop of the Ohio Administrative Code. Thus, his motion to compel State Farm to perform an appraisal of the roof under the terms of his insurance policy at this stage of the proceedings (Doc. 10) is **DENIED**.

## I.    BACKGROUND

State Farm issued a homeowners insurance policy (the "Policy") to Olson on October 5, 2021. *See* Doc. 4, PageID 60; Doc. 19, PageID 259. Following a wind and hailstorm in April 2022, Olson sought an assessment under the Policy to determine the extent of damage. One of State Farm's agents assessed Olson's home and determined that the loss required minimal repairs and provided an estimate for replacing three shingles costing around $600. Doc. 3, PageID 48. This was less than the deductible on the Policy. *Id.* at PageID 46. Olson then hired a separate estimator who determined the loss to be much more substantial, totaling over $30,000. *Id.* at PageID 53. Olson submitted the estimate to State Farm, to which he received no immediate response. Olson then demanded an appraisal under the Policy:

> If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal.

*Id.* at PageID 56 (emphasis omitted). State Farm refused an appraisal, stating that it would not be appropriate since the dispute did not concern the amount of loss. *Id.* at PageID 58.

This dispute cannot be resolved without considering Olson's reasons for advocating for an entire roof replacement. From his perspective, Option OL in the Policy requires that State Farm make repairs in compliance with Ohio law. He therefore argues that because the Ohio Administrative Code requires shingles to match, State Farm must replace all of the shingles on his roof—including those not damaged by the storm—to comply. *See* Doc. 18-1. State Farm, for its part, denies that either Ohio law or the Policy require repairs beyond replacing the damaged shingles. Based on these differences, Olson believes the parties disagree over the extent of damage caused by the storm because State Farm disputes whether the necessary repairs from the storm damage extend to replacing undamaged shingles. Under that theory, Olson says that State Farm is contractually required to submit to an appraisal to

resolve the dispute over the extent or amount of loss. Doc. 10, PageID 115. State Farm counters, however, that because the parties disagree over whether Option OL or Ohio law require additional repairs beyond State Farm's estimate, the dispute turns on a question of law or coverage, which is something an appraisal cannot resolve. Doc. 18, PageID 237.

## II.    LAW & ANALYSIS

The purpose of an appraisal is to resolve a dispute without litigation by "provid[ing] a plain, speedy, inexpensive and just determination of the extent of the loss. . ." *Saba v. Homeland Ins. Co.*, 112 N.E.2d 1, 3 (Ohio 1953) (citing 45 Corpus Juris Secundum, 1353, Section 1110); *Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-cv-0549, 2022 WL 3584263, at *2 (N.D. Ohio Aug. 22, 2022). Appraisal clauses are "an integral part of the body of each policy precisely the same as every other paragraph," *Saba*, 112 N.E.2d at 4, and are enforceable in Ohio as "any other bargained-for contractual right," *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, Case No. 2:21-cv-4950, 2022 WL 7178548, at *2 (S.D. Ohio Sept. 22, 2022). And, as particularly relevant here, when parties cannot agree as to the "amount of loss," either party may demand an appraisal. *Saba*, 112 N.E.2d at 1, 4.

While no Ohio decision has settled the issue of what is meant by "amount of loss" both parties agree it at least encompasses "extent of damages" as consistent with case law on this issue. *See* Doc. 10, PageID 115; Doc. 11, PageID 137; *Westview Vill.*, 2022 WL 3584263, at *2. Ohio courts have found that an appraiser's inquiry into the extent of loss may necessarily also consider the cause of that loss. *Id.* at *3. For example, if parties agree that a storm caused at least some loss but disagree whether the extent of damages are due to a storm or wear and tear, this involves a consideration of cause. *See id.* at *1. That factual question of what caused identified damage can readily be answered by an appraisal. *Id.* at *4.

On the other hand, however, an appraisal addressing a dispute over the amount of loss cannot be used to resolve questions of law or coverage. *James Leonard v. State Farm Fire & Cas. Co.*, Butler County C.P. No. CV 2023 06 1145 (Sept. 21, 2023) ("The issue is whether State Farm is required by its policy to replace the entire roof, even though the entire roof was not damaged in the storm, to comply with Ohio law. This is a question of coverage, and a question of law — both of which are specifically excluded from the authority of appraisers."); *Prakash v. Allstate Ins. Co.*, Case No. 5:20-cv-00524, 2021 WL 37698, at *2 (N.D. Ohio Jan. 5, 2021) ("Ohio law mandates that insurance policy coverage disputes are legal questions for the Court."). Thus, to compel an appraisal, the movant must show that there is a dispute over the amount, extent, or cause of loss—not over the extent of the policy's coverage.

Olson suggests that the "amount of loss" language is ambiguous and should be resolved in his favor. Indeed, the parties rely on Ohio decisions that have conflicting interpretations of what "amount of loss" means. *See e.g.*, *Tuttle v. State Farm Fire & Cas. Co.*, Butler County C.P. No. CV 2022 10 1768 (Jan. 20, 2023) ("the language in this contract is clear, either party may object and seek appraisal."); *contra James Leonard*, No. CV 2023 06 1145 (Sept. 21, 2023) (declining to follow *Tuttle*).[1] Yet in addition to Ohio cases, Olson relies on a Minnesota Supreme Court case, *see* Doc. 10, PageID 114, which explicitly states that ". . . we conclude that the phrase 'amount of loss' is *not ambiguous*, because it is susceptible to only one reasonable interpretation. Specifically, in the insurance context, an appraiser's

---

[1] The parties cite several local Ohio decisions throughout their pleadings. Yet these decisions do not present a conclusive answer to whether an appraisal is appropriate under these facts. *Compare Mika, et al. v. State Farm Fire & Cas. Co.*, Warren C.P. No. 22 CV 95563 (Mar. 9, 2023); *see also James Leonard*, No. CV 2023 06 1145 (Sept. 21, 2023) (not compelling appraisal); *with Tuttle*, No. CV 2022 10 1768; *Abner v. State Farm Fire & Cas. Co.*, Clermont County C.P. No. 2022 CVC 00824 (Jan. 3, 2023) (compelling appraisal). Because Ohio courts have not provided a clear course of action, the Court must anticipate how the Ohio Supreme Court would address the matter here. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss." *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (emphasis added); *see also Westview Vill.*, 2022 WL 3584263, at *3.

The phrase "amount of loss" in the context of this dispute is not ambiguous. "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190 (10th Ohio App. 2003). Here, Olson's Policy explicitly states that an appraiser has no authority to decide questions of law or coverage.[2] Olson's interpretation of the operative language of the Policy cannot alter this fundamental point. His interpretation is that "[t]he proper determination of the appraisal provision, then, is that each party can appoint an appraiser and together they will determine the extent of damage, and thus the 'amount of loss,' covered under Olson's Homeowner's Policy." Doc. 19, PageID 253. However, determining the extent of damages is different than determining the extent of coverage—something only a court can resolve. *Prakash*, 2021 WL 37698, at *2. The Policy language at issue is unambiguous when, as here, the Court finds that the parties' present dispute is over law or coverage.

At its core, the dispute in this case between the insurer State Farm, and the covered Olson, turns on a legal question—and not so much a disagreement over the amount of loss. The exact reasons the parties disagree over the cost of repairing Olson's home are not readily apparent upon an initial examination of the motions. But as developed further in the parties'

---

[2] The Policy specifically states: Appraisal is only available to determine the amount of the loss of each item in dispute. The appraiser and the umpire have no authority to decide: (1) any other questions of fact; (2) questions of law; (3) questions of coverage; (4) other contractual issues; or (5) to conduct appraisal on a class wide basis. Doc. 3, PageID 57–58.

memoranda in support,[3] Olson argues that Ohio Administrative Code requires a roof replacement for the roof to "match" and that State Farm's estimated repairs—replacement of three roof shingles at a cost of about $600—are not enough to create a "reasonably comparable appearance." Doc. 19, PageID 254 (quoting O.A.C. 3901-1-54(I)(1)(b)). Because of the appearance of this language in the Ohio Administrative Code, Olson strenuously contends that a full roof replacement of *all* the shingles at an estimated cost of $30,000 is covered by Option OL within his insurance policy. *Id*. In response, State Farm cites Olson's argument as proof that the root of the dispute is over law and coverage, rather than over the extent or amount of loss incurred in this case. Doc. 11, PageID 137–39.

The Court agrees with State Farm. Unlike in similar cases when courts in this district have ordered appraisals, the parties here are not disputing what caused the damage to Olson's home. *See Westview Vill.*, 2022 WL 3584263, at *1 ("Plaintiff argues that the storm damage requires replacing its condominiums' roofs. Defendant argues that ordinary wear and tear caused most of the claimed damage."); *Hunters Glen Condo. Ass'n v. State Farm Fire & Cas. Co.*, 2024 U.S. Dist. LEXIS 82221 (S.D. Ohio May 6, 2024) (court compelled appraisal when the parties disagreed if a storm or ordinary wear and tear caused damages); *Stonebridge*, 2022 WL 7178548, at *2 (court ordered appraisal to determine whether hail damage caused further damage than the insurer estimated).

---

[3] Plaintiff's argument that Ohio Administrative Code and "Option OL" in the policy require the roof to be replaced is newly raised in reply. "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition." *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). However, as the argument was responded to in part by Defendant, Doc. 18, PageID 237, the Court will weigh the argument insofar as it implicates whether an appraisal should be granted. For the purposes of this motion, the Court will not address whether Ohio Administrative Code or Option OL require "matching."

Take *Westview Village* for example. The Court there found that the parties' dispute was over the "factual amount-of-loss" and ordered an appraisal *Id.* at *4. The insurer attributed the damage to uncovered causes (wear and tear) while the insured argued the damage was caused by a covered event. *Id.* at *1. Here, the parties' conflict is not about whether the cause of the damage was a covered event. State Farm concedes that it was, *i.e.*, the roof damage caused by the storm was a covered event. Nor is Olson claiming coverage for any additional wind damage which State Farm is attributing to wear and tear. Both parties agree a covered event—a storm—damaged Olson's roof. Doc. 4, PageID 60–61. What the parties disagree about is whether Option OL within the Policy would require a complete roof replacement so as to comply with Ohio law. Doc 19, PageID 254; Doc. 18, PageID 237. Resolving that disagreement necessarily asks a question of law. Namely, does the Policy require State Farm to provide a roof replacement to create a "reasonably comparable appearance" in compliance with Ohio law? Answering that question is premature at this stage and is not resolvable by an appraisal because it regards policy interpretation. *Prakash*, 2021 WL 37698, at *2.

Finally, State Farm asks that, if the Court does order an appraisal, that the Court use the appraisal approach method deployed in *Cinnamon Ridge Condo. Ass'n, Inc. v. State Farm Fire & Cas. Co.*, Case No. 3:22-cv-118, 2024 WL 2214199 (S.D. Ohio May 16, 2024). Doc. 11, PageID. 113. In that case, the parties disputed the *cost* of replacing damaged shingles with matching shingles and whether the entire roof would need to be replaced. *Id.* at *2. There, the court ordered an appraisal that would, "separately calculate and identify *disputed costs*— including damaged property as well as undamaged property whose replacement Plaintiff may claim if necessary for appearance purposes—so that the Court can either include or exclude

them once it has determined whether the policy provides coverage for them." *Id*. (emphasis added).

While other courts within the Southern District of Ohio have adopted the *Cinnamon Ridge* appraisal approach, *see Rsrvs. at Beavercreek Condo. Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-cv-00098, 2023 WL 9183683, at *2 (S.D. Ohio Dec. 15, 2023) (adopting the approach in *Cinnamon Ridge*); *Udom v. State Farm Fire & Cas. Co.*, 2024 U.S. Dist. LEXIS 98994, at *6 (S.D. Ohio June 4, 2024) (following *Rsrvs. At Beavercreek Condo* in adopting *Cinnamon Ridge*), this Court declines to follow that trend. That approach is ill suited for the specific facts of this case. Here, the needs of the parties in the litigation cannot be met by simply deploying the appraisal process from *Cinnamon Ridge*, nor does the Policy require an appraisal to resolve a question of law or coverage. When ruling on cross motions for summary judgment, the Court in *Cinnamon Ridge* explained that "the appraisal itself was not meant to determine whether the Association is entitled to full roof replacement costs or whether such replacements are in fact necessary to achieve a reasonably comparable appearance." *Cinnamon* Ridge, 2024 WL 2214199, at *7. Again, the parties here are disputing whether Olson is entitled to a full roof replacement based on whether the replacement shingles will match—or in the words of the regulation whether the replacement shingles will achieve a reasonably comparable appearance. Since this is ultimately a question of law (calling for an interpretation of what constitutes compliance with the Ohio Administrative Code), this Court agrees with the Court in *Cinnamon Ridge* that an appraisal cannot resolve such a dispute and declines to adopt the appraisal order employed in that case, at least at this stage.

### III.    CONCLUSION

It remains to be seen whether Olson is entitled to the coverage he seeks under the Policy. Because there is no dispute over "amount of loss" that could be resolved by an appraisal at this stage in the proceeding, Olson's request is premature, and his Motion (Doc. 10) is therefore **DENIED**.

**IT IS SO ORDERED.**

September 30, 2024

Jeffery P. Hopkins
United States District Judge